UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HECTOR L. VEGA,

    Plaintiff,

v.                                                                   Case No:   6:18-cv-860-Orl-41TBS

RIKER'S ROADSIDE SERVICES, LLC,
CORO IMPORT EXPORT, INC. and
VICTOR S. GUABECA,

    Defendants.
_____

## REPORT AND RECOMMENDATION

Pending before the Court is the parties' Joint Motion for Approval of Proposed Settlement and Stipulation for Dismissal with Prejudice (Doc. 19). Upon due consideration, I respectfully recommend that the motion be granted, and the settlement agreement be approved, with some deletions.

### I. Background

On June 1, 2018, Plaintiff Hector Vega sued his former employers, Defendants Riker's Roadside Services, LLC, Coro Import Export, Inc. and Victor S. Guabeca for unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq* (Doc. 1). According to Plaintiff, Defendants provided roadside assistance to motorists and "moved and handled automobiles in the stream of commerce" (Id. ¶ 19). Plaintiff alleges he was a non-exempt hourly employee who worked for Defendants from April 16, 2017 through April 20, 2018, at a pay rate of $10.28 per hour (Id., ¶¶ 21-24). Plaintiff claims that at various times during his employment he worked in excess of forty hours per week (Id. at ¶ 26). Plaintiff alleges that Defendants either willfully, or with reckless disregard, failed to properly compensate him at the pay rate established by the FLSA (Id.

at ¶¶ 27-30). Defendants deny all of Plaintiff's allegations and assert nine affirmative defenses (Doc. 8). On August 2, 2018, the parties informed the Court that they have reached an agreement to resolve this controversy (Doc. 19). The parties' agreement is now before the Court for review, pursuant to Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354-55 (11th Cir. 1982).

## II. Legal Standard

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" Barrentine v. Ark.-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981) (alternation in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 206 establishes the federally-mandated minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived." Barrentine, 450 U.S. at 740. To permit otherwise would "'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to effectuate." Id. (quoting Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1946)).

The parties seek judicial review and a determination that their settlement of Plaintiff's FLSA claim is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. See Lynn's Food Stores, 679 F.2d at 1354-55. If a settlement is not one

supervised by the Department of Labor, the only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employers under section 216(b) to recover back wages for FLSA violations. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." Id. at 1353 (citing Schulte, Inc. v. Gangi, 328 U.S. 108 (1946)).

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." Id. at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

Id.

In determining whether a settlement is fair and reasonable, the Court considers the following factors: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." Hamilton v. Frito-Lay, Inc., No. 6:05-cv-592-Orl-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8,

2007). There is a "'strong presumption' in favor of finding a settlement fair." Id. (citing Cotton v. Hinton, 559 F.2d 1331 (5th Cir. 1977)).

Before approving a settlement, the district court must first scrutinize the parties' agreement and determine whether it is a "fair and reasonable resolution of a bona fide dispute" of the FLSA issues. Lynn's Food, 679 F.2d at 1354-55. If the settlement reflects a reasonable compromise of issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement in litigation." Id. at 1354. The nature of this lawsuit prompts the district court's review of the parties' settlement agreement rather than an examination conducted by the Secretary of Labor. My assessment of fairness is guided by prevailing case law in this Circuit, including Fiber Moreno v. Regions Bank, 729 F. Supp. 2d 1346 (M.D. Fla. 2010) and Dees v. Hydrady, Inc., 706 F. Supp. 2d 1227, 1242-43 (M.D. Fla. 2010).

### III. Discussion

#### A. Settlement Sum

The parties have agreed to settle Plaintiff's claim for a total of $6,540 (Doc. 19 at 3; Doc. 19-1 at 1-2). The money will be disbursed as follows: $1,500 in unpaid wages, $1,500 in liquidated damages, and $3,540 in attorney's fees and costs (Id.). Like most settlements, this one is driven by the facts and the parties are much better informed than the Court about the facts. No badges of fraud or overreaching are apparent, and the parties are represented by experienced attorneys. Therefore, I see no reason to question the parties' judgment and find that the settlement amounts are reasonable.

#### B. Beneficiaries of the Settlement Agreement

The term "Defendants" is defined very broadly in the settlement agreement and includes "all officers, members, members [sic], shareholders, past and present employees, supervisors, agents, representatives, insurers, attorneys, any affiliates,

parent, subsidiaries and related entities, and any successors and assigns of any of these parties including without limitation ..." (Doc.19-1 at 1). I appreciate Defendants' desire for finality but, these non-parties are not identified; they are not signatories to the agreement; it does not appear that they are paying any consideration; there is no evidence that Plaintiff knows who they are so that he could make a knowing and intelligent decision whether to sign the settlement agreement; and the parties have not provided any reason for the inclusion of these non-parties in the agreement. Consequently, I cannot recommend approval of the agreement. See Arguelles v. Noor Baig, Inc., Case No. 6:16-cv-2024-Orl-37TBS, 2017 U.S. Dist. LEXIS 26024 (M.D. Fla. Feb. 24, 2017). To cure this problem, I respectfully recommend that the district court employ the severability clause[1] in the settlement agreement to exclude the following language from paragraph 3 of the agreement:

> … together with all officers, members, members, shareholders, past and present employees, supervisors, agents, representatives, insurers, attorneys, any affiliates, parent, subsidiaries, and related entities, and any successors and assigns of any of these parties …

(Doc. 19-1, ¶ 3).

### C. Release

The settlement agreement includes a release of Defendants by Plaintiff from "any and all Claims, as hereinafter defined, that Vega may have had against Defendants whether or not asserted in the Lawsuit" and "or which would have been asserted" (Doc.

---

[1] The severability clause provides:

> Should any provision of this Agreement be declared or determined to be illegal or invalid, such provision shall be severed and the validity of the remaining parts, terms, or provisions shall not be affected thereby, and the illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement.

(Doc. 19-1 at 3, ¶ 6).

19-1 at 1). General releases in FLSA cases are frequently viewed as "'side deals' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee" and therefore, such releases "confer[ ] an uncompensated, unevaluated, and unfair benefit on the employer." Moreno, 729 F. Supp. 2d at 1351-52. "A compromise of an FLSA claim that contains a pervasive release of unknown claims fails judicial scrutiny." Id. at 1352. The release in the settlement agreement fails judicial scrutiny. Therefore, I respectfully recommend that the district court employ the severability clause to remove the following language from the agreement:

> … together with any and all Claims, as hereinafter defined, that Vega may have against Defendants whether or not asserted in the lawsuit; …

(Third WHEREAS Clause, Doc. 19-1 at 1).

> .. or which could have been asserted in the Lawsuit.

(Doc. 19-1, ¶ 1).

### D. Attorney's Fees

The parties represent that the $3,540 for attorney's fees and costs to be paid to Plaintiff's counsel, was negotiated separately from Plaintiff's recovery without regard to the amount to be paid to Plaintiff (Doc. 19 at 5-6). This is a sufficient to establish the reasonableness of the fees and that Plaintiff's recovery was not adversely affected by the amount of fees paid to his counsel. See Bonetti v. Embarq Mgmt Co., 715 F. Supp. 2d 1222 (M.D. Fla. 2009); see also McQuillan v. H.W. Lochner, Inc., No. 6:12-cv-1586-Orl-36TBS, 2013 WL 6184063, at *3 (M.D. Fla. Nov. 25, 2013).

### E. Retention of Jurisdiction

In their motion, the parties ask the Court to retain "jurisdiction to enforce the provisions of this Agreement." (Doc. 19, ¶ 1). The Court should deny this request. See

Kokkonen v. Guardian Life Ins., 511 U.S. 375, 378-381 (1994); cf. Colon v. Kissimmee B-Logistic Serv., No. 6:15-cv-733-Orl-40KRS, 2016 U.S. Dist. LEXIS 72622, at *8-9 (M.D. Fla. May 16, 2016) ("[C]ourts in this District routinely deny requests to retain jurisdiction to oversee and enforce the terms of an FLSA settlement agreement") (citing Santiago-Valle v. Transition House, Inc., No. 6:15-cv-715-Orl-40GJK, 2015 U.S. Dist. LEXIS 169419, at *12 (M.D. Fla. Dec. 10, 2015)). If a party breaches the agreement then in all likelihood, the Court will not have subject matter jurisdiction, and the dispute will have to be litigated in state court.

## IV. Recommendation

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that the district court **SEVER AND REMOVE** the objectionable portions of the settlement agreement, and then **GRANT** the parties' joint Motion for Approval of Settlement (Doc. 19). The Court should make clear in its order that it is not retaining jurisdiction to enforce the parties' agreement.

## V. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1. If the parties do not object to this Report and Recommendation, then they may expedite the approval process by filing notices of no objection.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on August 15, 2018.

*[signature]*
THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record